UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re:

CALESTRO C. BRADFORD,

Debtor.
_______________________________/

Chapter 13
Case No. 16-53993-mbm
Hon. Marci B. McIvor

**MOTION FOR ENTRY OF ORDER AUTHORIZING SALE OF PROPERTY FREE AND CLEAR OF LIENS, PAYMENT OF REAL PROPERTY TAXES, HOMEOWNER'S ASSOCIATION DUES, COMMISSIONS AND CLOSING COSTS AT CLOSING AND FOR OTHER RELIEF**

NOW COMES the Debtor, Calestro C. Bradford, by and through her attorneys Gold & Majoros, P.C., and requests that this Court enter an order pursuant to Fed. R. Bankr. P. 6004(c) & 9014 and 11 U.S.C. §§ 363(b) & 363(f) authorizing the Debtor to sell real property located at 30870 Bradmore Road, Warren, Michigan 48092 free and clear of liens, transfer of liens to proceeds, and to pay real property taxes, commissions, and closing costs at closing and for other relief. (See **Exhibit 1**).

IN SUPPORT of this motion, the Debtor states:

**Jurisdiction**

1. The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(1) & 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(N).

**Facts**

3. On October 13, 2016, Calestro C. Bradford (the "Debtor") filed a petition under Chapter 13 of Title 11 of the United States Code. David Wm. Ruskin is the Chapter 13 Trustee in this case (the "Trustee").

4.     The Debtor's Chapter 13 Plan of Reorganization ("Plan") was confirmed on August 16, 2017.

5.     The assets of this bankruptcy estate include the bankruptcy estate's interest in the Debtor's residential property commonly known as 30870 Bradmore Road, Warren, Michigan 48092 (the "Property").

6.      The Property is subject to liens, claims, and encumbrances, including a mortgage in favor of U.S. Bank Trust Association as Trustee of Chalet Series III Trust ("U.S. Bank").  A third party purchaser, Syed R. Ahmed ("Ahmed"), has made a formal written offer to purchase the Property (See **Exhibit A**).

7.     The Debtor, through her real estate broker, Paula Cikota of Keller Williams Reality Lakeside, has entered into a purchase agreement with Ahmed as buyer for the short sale of the Property for $306,000.00.   Ahmed is not an insider of the Debtor and has no known connections with any party in interest in this case.

8.     A copy of the payoff letter and the Closing Disclosure is attached as **Exhibit B** and its terms are incorporated herein.

9.     In accordance with Sections 363(b)(1) and (f) of the Bankruptcy Code, the Debtor seeks to sell the Property free and clear of all claims, liens, interests, and encumbrances and transfer any claims, liens, interests or encumbrances to the proceeds of the sale.

10.     Although the Debtor is not netting any proceeds from the sale, she believes that the proposed sale of the Property is in the best interest of the bankruptcy estate and its creditors, as the sale will maximize the value of the Property and pay all lien holders in full.

**Request for Authority to Sell Property**

11. Section 363(b) of the Bankruptcy Code provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." In general, a trustee may sell property of the estate outside of the ordinary course of business where the sale represents an exercise of the trustee's sound business judgment. *See, e.g.*, Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986); Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2nd Cir. 1983). Courts typically consider the following four factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale, (b) whether accurate and reasonable notice of the sale was given to interested parties, (c) whether the sale will produce a fair and reasonable price for the property and (d) whether the parties have acted in good faith. *See, e.g.*, In Re Titusville County Club, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991). Here, each of these four factors is met. Accordingly, the proposed sale of the Property should be approved.

12. Section 1327(b) vests all property of the bankruptcy estate in the debtor upon confirmation of a debtor's plan. Therefore, a debtor stands in the shoes of the trustee with respect to bankruptcy estate property upon confirmation of the debtor's plan.

13. In the instant case, the Debtor believes a sound business justification exists for the sale. The Property is not necessary for any reorganization effort, and has become a burden for the bankruptcy estate. The Debtor is unable to maintain the Property any longer and the Property has been marketed to the public by an experienced real estate broker. The proposed sale is an arm's length transaction and will result in no net sale proceeds going to the Debtor.

14. Second, the concurrent with the filing of this Motion, the Debtor has filed a ex-parte motion to for an expedited hearing on the instant motion and to shorten the response period

on the Motion on: (a) the United States Trustee; (b) all potential lien holders; (c) taxing authorities; (d) the Chapter 13 Trustee, and (e) the other parties on the matrix in this case. The payoff letter provides that the closing must take place on or before December 30, 2019. Additionally, the closing needs to take place no later than December 17, 2019, as Ahmed is going to be out of the country for the holidays.

15.     Third, the Debtor believes the sale price is fair and reasonable based upon the condition of the Property, market conditions, the location of the Property and comparable property values in the area.

16.     Fourth, the Property is not currently subject to the automatic stay (See Docket No. 139).  A sale of the Property would allow U.S. Bank, and all other lien holders, to be paid in full, as opposed to U.S. Bank being forced to foreclose on the Property and potentially suffer a loss.

17.     Finally, courts generally conclude that parties have acted in good faith with respect to a proposed sale if the purchase price is adequate and reasonable and the terms of the sale are fully disclosed.  For the reasons set forth above, all of these requirements are met here. The Debtor, in the exercise of his sound business judgment, believes that the proposed sale of the Property to the Purchaser on the terms set forth in the sales contract is in the best interests of the estate and its creditors.

18.     For all the reasons set forth above, the sale of the Property should be approved pursuant to Section 363(b) of the Bankruptcy Code.

**Request for Authority to Sell Property Free
and Clear of all Liens, Claims, and Encumbrances**

19.     Under Section 363(f) of the Bankruptcy Code, a trustee may sell property of the estate free and clear of all liens, claims, encumbrances, redemption rights, and other interests (collectively, the "Property Interests") asserted in or against the property being sold if: (a) such a

sale is permitted under applicable non-bankruptcy law; (b) the parties asserting the Property Interests consent to the sale; (c) the sale price exceeds the aggregate value of all such liens on the property; (d) the Property Interests are subject to a bona fide dispute; or (e) the parties asserting the Property Interests could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. The Court may approve a sale free and clear of all Property Interests so long as one of the requirements of section 363(f) is satisfied. *See e.g.*, In re Elliot, 94 B.R. 343, 345 (E.D. Pa. 1988).

20. In this case, all property taxes, homeowner's association dues and any other encumbrances will be paid in full at closing. In particular, the Debtor intends to distribute a portion of the sales proceeds to Keller Williams for the broker's commission amount pursuant to the sale agreement.

21. Accordingly, the Debtor seeks authority to sell the bankruptcy estate's interest in the Property pursuant to the purchase agreement free and clear of any Property Interests, with any Property Interests transferred to the proceeds of sale.

**Authority to Pay Closing Costs, Mortgages, Commissions, and Taxes at Closing**

22. The proposed order provides for payment of a real estate commission not to exceed six (6%) percent of the gross sale price.

23. The Debtor also requests that the Court authorize her to pay for, at closing, any of the following: transfer taxes, title work, unpaid property taxes, unpaid special assessments, unpaid water bills, and normal closing costs.

24. Finally, the Debtor requests that the Court grant her the authority to execute any and all documents and agreements, and to do anything necessary or appropriate to implement and effectuate the sale.

WHEREFORE, the Debtor requests that this court grant her authority to consummate the purchase agreement, to sell the real property free and clear of all encumbrances, and to pay the real property taxes, homeowner's association dues, commission, and closing costs at closing.

Respectfully submitted,

GOLD, LANGE & MAJOROS, P.C.

Dated: December 2, 2019

*/s/ Jason P. Smalarz*
JASON P. SMALARZ (P71042)
Attorneys for Debtor
24901 Northwestern Highway, Suite 444
Southfield, MI 48075
(248) 350-8220
jsmalarz@glmpc.com

H:\GLM CLIENTS - CH 13\Bradford, Calestro (Callie)\Motion to Sell\Motion to Sell Property.12.2.19.doc

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re:

CALESTRO C. BRADFORD,

Debtor.
_______________________________/

Chapter 13
Case No. 16-53993-mbm
Hon. Marci B. McIvor

**ORDER AUTHORIZING SALE OF PROPERTY FREE AND CLEAR OF LIENS, PAYMENT OF REAL PROPERTY TAXES, HOMEOWNER'S ASSOCIATION DUES, COMMISSIONS AND CLOSING COSTS AT CLOSING AND FOR OTHER RELIEF**

Calestro C. Bradford, the Debtor in the instant Chapter 13 bankruptcy case (the "Debtor") filed a Motion for Entry of Order Authorizing Sale of Property Free and Clear of Liens, Payment of Real Property Taxes, Homeowner's Association Dues, Commissions, and Closing Costs at Closing and for Other Relief (the "Motion"); Notice of the Motion having been served on all interested parties and the matrix of creditors; no objections having been timely filed or served; and the Court being duly advised in the premises:

IT IS HEREBY ORDERED as follows:

(1) The Debtor's Motion is granted.

(2) The Debtor is authorized to sell the bankruptcy estate's interest in certain real property commonly known as 30870 Bradmore Road, Warren, Michigan 48092, and legally described as follows:

City of Warren, County of Macomb and State of Michigan, to wit:

THE RESERVE AT HERITAGE VILLAGE; M.C.C.P. NO. 943; UNIT # 191.

Tax Identification No. 12-13-08-205-191

**EXHIBIT 1**

(the "Property") to Syed R. Ahmed free and clear of any and all liens, mortgages, deeds, water and sewer bills, utility bills, judgment liens, tax liens, homeowner's association dues, lis pendens, and other claims and encumbrances pursuant to 11 U.S.C. § 363(b) & 363(f) according to the terms and conditions set forth in the Debtor's Motion. The Debtor may execute any documents or agreements and perform any acts that may be necessary and appropriate to implement, effectuate, and consummate the sale, including adjusting the purchase price or making other concessions. If Syed R. Ahmed fails to close, then the Debtor may substitute a new buyer on the same or different terms, including by changing the purchase price and the title company may rely on the Debtor's assurances with respect to the identity of any substitute purchaser.

(3)     All liens, claims, interests, and encumbrances against the Property, whether consensual or statutory, including:

a.     Mortgage dated November 16, 2007 recorded on November 26, 2007 with the Macomb County Register of Deeds at Liber 19060, Page 872 in favor of Countrywide Bank, FSB and assigned to U.S. Bank Trust Association as Trustee of Chalet Series III Trust;

b.     Homeowner's Association Dues to The Reserves at Heritage Village;

c.     Real Property Taxes to the City of Warren/Macomb County Treasurer; and

d.     Water Bill to the City of Warren/Macomb County.

are extinguished with respect to the Property. The Debtor shall pay all property taxes, transfer taxes, closing costs, broker commission not to exceed six (6%) percent and broker expenses associated with maintaining the Property and city inspections, utilities, carpet cleaning, property insurance, payment for transfer taxes, title work, unpaid property taxes, unpaid special assessments, unpaid water bills, and normal closing costs from the gross proceeds of the sale of

the Property at closing. All other liens, claims, interests and encumbrances against the Property will attach to the net sale proceeds of the sale of the Property with the same priority, validity and enforceability that any such liens, claims and encumbrances may have had against the Property prior to the sale. The net sale proceeds paid to the debtor, if any, will be paid into the Debtor's Chapter 13 Plan.

(4)     The Debtor may execute such documents, instruments, and agreements and perform such acts as may be necessary and appropriate to implement, effectuate, and consummate the sale of the Property.

(5)     All federal, state, county and local governmental agencies or departments are ordered and directed to accept all filings, deeds and instruments necessary and appropriate to consummate the sale transaction contemplated by this order including, without limitation, filings in the recording offices in Macomb County, Michigan and state governmental agencies or departments.

(6)     Pursuant to Fed. R. Bankr. P. 6004(h), the Debtor may consummate the sale authorized by this Order prior to the expiration of 14 days after entry of this Order.

KW LAKESIDE
KELLERWILLIAMS. REALTY

45609 Village Blvd | Shelby Twp, MI | 48315 | (586) 532-0500

# PURCHASE AGREEMENT

MLS#__________

LISTING BROKER: Keller Williams lakeside

SELLING BROKER: __________

LISTNG AGENT Dave Klaft — Paula Curdta

SELLING AGENT: Jaime Arnold

AGENT ID# ______ OFFICE ~~[illegible]~~2

AGENT ID# ______ OFFICE ID 224412

AGENT E-MAIL: __________

AGENT E-MAIL: __________

PHONE: 586-532-0500 FAX: ______

PHONE 248-837-9307 FAX: ______

1. **PROPERTY:** The undersigned Buyer hereby offers and agrees to purchase property located in the ☐ city ☐ township ☐ village of ________, Macomb County County, Michigan, 48092, legally described as [*subject to verification*]:

THE RESERVE AT HERITAGE VILLAGE; M.C.C.P. NO. 943; UNIT # 191

Commonly known as 30870 Bradmore Road Tax Parcel ID 12-13-08-205-191,

1a. Unless excluded in 1b. below, the Property shall include all available subsurface and mineral rights, all fixtures, improvements and appurtenances now in or on Property, including all trees, shrubs, landscaping, out buildings, built-in appliances/equipment shelving, cabinets, all lighting fixtures, ceiling fans, attached carpeting, all window treatments and hardware, attached mirrors, hard-wired telephone system, surround sound system and instruments designed for the system, television antenna, satellite dishes and complete rotor equipment, storm doors, storm windows, screens, awnings, garage door openers and transmitters, grates, gas attachments and equipment, attached humidifiers, fuel in tanks, central vacuum and attachments, situated upon the Property at the time of Buyer making this Offer.

1b. Anything listed above to be excluded and/or excluded in the Listing or any MLS publication must be listed here, or they will be deemed included in the sale: __________.

1c. The Purchaser(s) request the following items be included in the sale:

Appliances: ☐ None ☑ Refrigerator ☑ Stove ☑ Microwave ☑ Dishwasher ☐ Washer ☐ Dryer

[*Unless excluded in 'Other' below, all of the above that are 'built-ins' are deemed as being checked.*]

☐ OTHER: __________

1d. Excluded from Sale: __________.

2. **PRICE:** Buyer agrees to pay the sum of $306,000 (USD) in consideration for which Seller will provide a Warranty Deed at the closing conveying marketable title subject to existing and building and use restrictions and easement and rights of way of record.

CCB Seller(s) Initials

**EXHIBIT A**

SRA 10/04/19 7:53 PM EDT dotloop verified Purchaser(s) Initials

Copyright 2019 Keller Williams Realty Lakeside Market Center

2a. **CONTINGENCY:** This Offer ☐ is ☑ is not contingent upon one of the following:

☐ Closing of Purchaser's home at ______________________________ not later than ______________

☐ Sale & Closing of Purchaser's home – [*72 Hour Contingency Addendum to be attached*]

3. **METHOD OF PAYMENT:** All money must be paid in U.S. funds by cashier's check, wired funds or such other funds acceptable to the closing agent. Sale shall be completed by the following method: [*Mark only the box that applies.*]

☐ 3a. **CASH SALE:** Delivery of a Warranty Deed conveying marketable title and payment of the purchase price in cash at closing.

☐ 3b. **CASH SALE WITH NEW MORTGAGE:** Closing contingent upon Buyer securing a conventional [Type of Mortgage] Mortgage in the amount of $183,600 and paying $122,400 down plus mortgage costs, prepaid items, adjustments and flood insurance if required by lender. Buyer agrees to apply for such mortgage at buyer's own expense within 3 calendar days from the date of the final acceptance of this Agreement. Buyer further agrees that in connection with application to lender, Buyer will promptly comply with lender's requirements and requests for true and accurate information required to process loan application. If a mortgage commitment conditioned only upon marketable title and satisfactory survey (if required) is not delivered to Listing Broker within 45 calendar days from the date of the final acceptance of this Agreement, the Seller may declare this Agreement void.

☐ 3c. **SALE BY LAND CONTRACT/MORTGAGE ASSUMPTION/SELLER FINANCING:** A Land Contract/Financing Addendum is attached and made a part hereof.

4. **EARNEST MONEY DEPOSIT:** Buyer has herewith deposited $10,000 with Keller Williams Lakeside. An additional sum of $0 (if none, mark "None"] shall be deposited within 0 calendar days of Buyer's receipt of Seller's acceptance, making the total Earnest Money Deposit ("EMD") $10,000 to be held in accordance with the laws of the State of Michigan and applied to the purchase price at closing. If this Offer is not accepted by Seller within ______ calendar days, the entire Earnest Money Deposit shall be returned to Buyer immediately upon their demand. Otherwise the EMD shall be disposed of pursuant to Michigan law and the regulations governing residential real estate brokers.

______________________, Agent has received an Ernest Money Deposit on ______________________ [*Date*].

Agent Signature: Jamie Arnold (dotloop verified 10/04/19 8:04 PM EDT WFYD-15G9-IKSW-YWM3) Printed Name: ______________________

5. **SELLER CONCESSIONS:** Seller agrees to pay concession of $__________ of the purchase price at closing to be used towards any of the following: Purchaser's closing costs, adjustments, discount points, 'pre-paids', insurance, pro-rated taxes & agency fee, if any. To conform to lender guidelines, any portion of the concessions may be itemized with Seller's other expenses.

6. **APPRAISAL:**

☐ This Offer IS NOT contingent upon an appraisal of the property for the Purchase Price.

☑ This Offer IS contingent upon a satisfactory appraisal at or above Purchase Price of the property. In the event the property appraisal comes in below purchase price within 3 days of Buyer's receipt of the property appraisal the Buyer may elect to either:

1. Re-negotiate price and/or terms acceptable to all parties; or
2. Declare Agreement null and void with full refund of Purchaser's earnest money deposit.

Purchaser's Agent shall notify Listing Agent in writing upon receipt of Appraisal Report with Purchaser's election.

7. **HOME PROTECTION PLANS:** The parties have been advised on the availability and benefits of a home warranty plan.

☑ YES The Purchaser would like a Home Protection Plan through America's Preferred Home Warranty Company, Keller Williams Lakeside Realty Market Center to prepare Home Warranty application to be paid at closing by seller at a Plan cost not to exceed $425. Other: ______________________________________________.

☐ NO The Purchaser hereby WAIVES a Home Warranty Plan and agrees to hold the Real Estate Brokers and Agents harmless and agrees to sign a Home Warranty Contract Waiver.

CCB | ______ Seller(s) Initials

SRA (10/04/19 7:53 PM EDT dotloop verified) | ______ Purchaser(s) Initials

Copyright 2019 Keller Williams Realty Lakeside Market Center

8. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT (FIRPTA): If the sale price meets or exceeds the amount required, the parties will be bound by FIRPTA requirements and shall complete a FIRPTA Addendum and/or make that filing.

9. CHOICE OF TITLE COMPANY: We are advised that by law and regulation a Seller cannot contractually bind the Purchaser to use a particular Title Company for placement of the Purchaser's mortgage title insurance.

☐ Purchaser intends on using First Premier Title Agency to secure Mortgage Title Insurance.

☑ Purchaser intends on using Liberty Title to secure Mortgage Title Insurance.

Purchaser retains the right to change the settlement provider at their discretion. If different title agencies are issuing the owner's and mortgage policies Seller AGREES to pay any and all fees to the agency issuing the owners policy except for the actual cost of recording the deed and up to $25.00 for recording handling. Purchaser agrees to pay any and all fees to the title agency issuing the mortgage policy.

10. COMMISSION DUE: Keller Williams Realty Lakeside Market Center is accepting any cooperating commission published in the MLS. In addition, the Purchaser is compensating its Broker a separate Flat Commission Fee in the amount of $________. All parties have been informed that Keller Williams Lakeside Market Center may be accepting compensation from the Purchaser(s) and Seller(s) as defined above. If the Purchaser is not represented by a Buyer's Agent the fee shall be deemed a Sub Agency Fee.

11. ELECTRONIC COMMUNICATION: As an alternative to physical delivery, the parties agree that this Agreement, any amendment or modification of this Agreement and/or any written notice or communication in connection with this Agreement may be delivered to the Seller(s) in care of the Listing Broker and the Purchaser(s) in care of the Selling Broker via electronic mail or facsimile via the contact information set forth above. Any such communication shall be deemed delivered at the time it is sent or transmitted. Seller(s) has provided an electronic email address to the Listing Broker at which Seller may receive electronic mail. Buyer has provided an electronic email address to Selling Broker from which Buyer may receive electronic mail.

**Purchaser(s) and Seller(s) agree [*All parties must affix their initials below for this paragraph to have effect*] that electronic signatures and initials shall be deemed to be valid and binding upon the parties as if the original signatures were present in the documents in the handwriting of each party.**

SRA 10/04/19 7:53 PM EDT dotloop verified — Purchaser(s) Initials

CCB — Seller(s) Initials

12. CLOSING: Subject to all conditions herein, closing shall take place on or before 01/02/2020, at the Property's Listing Office or other mutually agreed-upon location.

13. POSSESSION: Seller shall deliver possession to Buyer ☑ at closing or ☐ by ______ [*time*] _____ calendar days after closing [*'At Closing' to apply if no choice is made.*] If possession is not delivered at closing, from and including day of closing, through date of vacating property, SELLER SHALL PAY the sum of $ 50 per day. ☐ Purchaser's ☐ Seller's title insurer (the "Designated Escrow Agent") shall retain from amount due Seller the sum of 1-1/2 the daily fee, times total days for occupancy. Designated escrow agent shall disburse occupancy fee due Purchaser every 30 days, upon their written request. Seller shall be entitled to any unused portion of said occupancy fee as determined by date Property is vacated in broom clean condition and keys surrendered to ☐ Purchaser(s) ☐ Listing Broker ☑ Selling Broker. If Seller FAILS to deliver possession as specified herein, Seller shall pay TWICE the daily occupancy fee per day and may be liable for cost of eviction, actual attorney fees, damages and other costs incurred by Purchaser in obtaining possession and collecting any amount due. Brokers have no obligation, implied or otherwise, as to condition of premises or for seeing that premises are vacated on date specified.

14. WATER AND SEWER CHARGES: Seller agrees to pay for all sewer and water charges to the date of ☑ Closing ☐ Possession [*'Date of Possession' will apply if no choice is made.*] The Designated Escrow Agent shall retain from Seller at closing $300.00, or more if determined by the Designated Escrow Agent, for final water and sewer charges to be paid. Any unused portion shall be returned to Seller.

15. TITLE EVIDENCE AND SURVEY: Within five (5) business days from the date of the final acceptance of this Agreement Seller shall order a commitment of Title Insurance to be issued without standard exceptions (provided that Buyer secures at its own expense a survey if it is required by the title company to remove standard exceptions). The commitment shall be provided by Seller to

CCB — Seller(s) Initials

SRA 10/04/19 7:53 PM EDT dotloop verified — Purchaser(s) Initials

Copyright 2019 Keller Williams Realty Lakeside Market Center

Buyer as soon as it is available. Seller shall pay the premium for the Policy of Title Insurance at the closing which shall be issued in the amount of purchase price, and bear the date of closing, or later, guaranteeing title in condition required for performance of this Agreement. If Purchaser elects to close without a survey, the Policy may be issued with standard exceptions. The Commitment of Title Insurance shall be "marked up" at closing.

**16. TITLE OBJECTIONS:** If objection to title is made, Purchaser(s) may either cancel this Agreement by written notice to Seller(s) within 10 calendar days of Purchaser's receipt of the Title Insurance Commitment and receive an immediate refund of their EMD; or in the alternative, upon written notice from Purchaser(s) within 10 calendar days of Purchaser's receipt of the Title Insurance Commitment that title is not in the marketable condition required for performance hereunder citing the particular defects claimed, Seller(s) shall then have 30 calendar days, to either: (a) remedy title; or (b) obtain a title insurance commitment satisfactory to Purchaser(s). Thereupon, Purchaser(s) shall complete this purchase on the later of the date specified in this Agreement, or within 10 calendar days after receiving written evidence that the title has been remedied under (a) or (b) above. If Seller(s) is unable or unwilling to remedy title within the said 30 days, Purchaser(s) may either (a) waive their objections, or this Agreement may be declared null and void at Purchaser's option in which case the full EMD shall be returned to Purchaser(s) upon their written demand.

**17. TAX PRORATIONS:** All real property taxes due and payable on or before the date of closing shall be paid by Seller(s). Current taxes shall be prorated and adjusted as of date of closing in accordance with due date of municipality or taxing unit(s) in which Property is located. Purchaser(s) acknowledges that Property taxes are subject to change. Seller(s) shall pay transfer taxes and other costs required to convey marketable title. Purchaser(s) shall pay the warranty deed recording fees. Purchaser(s) shall be responsible for determining the principle residence exemption status of this property and any uncapping as a result of its purchase.

**18. SPECIAL ASSESSMENTS:** Seller(s) shall pay all public authority charges confirmed by municipality or taxing unit(s) ('Special Assessments') which are currently due and payable through the date of closing. Purchaser(s) shall be responsible for those assessments including, but not limited to, those assessed but value not yet determined, which become due and payable after the date of closing.

**19. CONDOMINIUM/HOMEOWNERS ASSOCIATION ASSESSMENTS:** Current dues for associations shall be prorated to the date of closing. Any delinquent condominium/homeowner association dues/assessments/liens shall be paid by Seller(s) at closing. Any capital association account balance of Seller(s) held for their account shall be assigned to Purchaser(s) at closing without reimbursement or credit to Seller. Any and all dues/assessments/liens confirmed and becoming due and payable after closing will be paid by Purchaser. (See 'Condominium Addendum' made a part hereof, if applicable.)

**20. MAINTENANCE OF PROPERTY/PRE-CLOSING WALK-THROUGH:** Seller(s) is responsible for keeping Property in substantially the same condition as of the date of Purchaser(s) making this Offer. Purchaser(s) reserves the right to walk through the Property at any time within the 48 hours prior to closing to determine whether the physical condition requirements called for in this Agreement have been met. Utilities shall be on during that walk-through. Seller(s) shall be responsible to maintain all of the Property and keep all systems in the same condition and good working order until the Property is vacated and keys are surrendered by Seller(s) except for conditions expressly waived by Purchaser(s) before or at the closing. Seller(s) agrees to leave Property broom-clean and free of debris and all of its personal property which shall be deemed abandoned if left behind.

**21. UTILITIES:** Seller(s) shall order final billings on all utilities (gas, electric, etc.) as of the day of possession and Seller(s) shall pay final billings. Seller shall not direct any utilities to be disconnected. Purchaser(s) is responsible to inform all utility companies of its ownership to continue service.

**22. RISK OF LOSS:** Seller(s) shall be responsible for any damage to the Property, except for normal wear and tear until the closing or possession, whichever is later. If there is damage that Seller(s) is unable or unwilling to repair or to arrange and pay to be repaired, Purchaser(s) has the option to cancel this Agreement and the Earnest Money Deposit shall be immediately refunded to Purchaser(s), or Purchaser(s) can proceed with the closing and deduct from the purchase price a fair and reasonable estimate of the cost to repair the Property and assume the responsibility for the repair, thereby releasing Seller(s). If the Property is destroyed or substantially damaged before closing, at Purchaser's option, this Agreement may become null and void, or Purchaser(s) may accept property and take assignment of any insurance proceeds as available.

**23. CLOSING FEES.** Buyer agrees to pay closing fees charged by lender and/or title company and a compliance/transaction fee of _\$295_ payable to Selling Broker at closing.

CCB

Seller(s) Initials

Purchaser(s) Initials

Copyright 2019 Keller Williams Realty Lakeside Market Center

**24. SELLER'S DISCLOSURE & LEAD BASE PAINT DISCLOSURES:**

☑ A. WITH SELLER DISCLOSURE. Purchaser(s) has, prior to writing this offer, received Seller's Disclosure Statement.

☐ B. WITHOUT SELLER DISCLOSURE. A Seller's Disclosure Statement was not provided to Purchaser(s) at time this Offer was written. Seller shall provide Purchaser(s) with a Seller's Disclosure Statement with Seller's Acceptance of this Offer.

☐ C. WITH LEAD BASE PAINT DISCLOSURE. Purchaser(s) has prior to writing this offer, received a Lead Base Paint Disclosure.

☐ D. WITHOUT LEAD BASED PAINT DISCLOSURE. A Lead Based Paint Disclosure Statement was not provided to Purchaser(s) at the time this Offer was written. Seller must provide Buyer with a Lead Based Paint Disclosure Statement as a part of Seller's Acceptance of this Offer.

**25. PURCHASER'S DUE DILIGENCE:** Due diligence that may be required by Lenders, Government agencies and/or Municipalities are not made for, nor should they be relied upon by a Purchaser. Broker recommends that Purchaser conduct independent private inspection(s) of Property at Purchaser's expense. A prudent Purchaser's 'due diligence' may include, but not be limited to, any inspection(s) or research deemed necessary by a Purchaser, including: structural integrity; condition of mechanical systems; environmental conditions; properly permitted improvements; health or safety conditions, such as furnace condition, fireplace inspection, electrical system review, plumbing, water quality and septic system efficiency, presence of water leaks, mold, radon, pest infestation etc.; boundary and easement disclosure surveys. A prudent Purchaser may also research, square footage; building and use restrictions; easements; ordinances; regulations; school district; and/or property tax status. If Purchaser elects to conduct Property Inspection(s) as indicated below, but does not notify Seller(s), in writing, within 7 calendar days from date of Purchaser's receipt of Seller's acceptance that Buyer is dissatisfied with results of their due diligence, this Agreement shall be binding. If Buyer notifies Seller in writing within that time that in Buyer's sole judgment, Buyer is dissatisfied with results of its 'due diligence', Buyer shall do one, or a combination, of the following within the contingency period stated above:

A. Present to Seller an amendment for mutual agreement that cites a list of repairs and/or conditions to be remedied; or,
B. Present to Seller an amendment for mutual agreement with a credit to be applied against the purchase price, and/or a price reduction, in full satisfaction of this contingency; or,
C. Present to Seller a Notice of Dissatisfaction with due diligence which shall render Agreement null and void with the EMD being returned to Buyer immediately upon their demand.

In the event Seller and Buyer are unable to reach an Agreement to Buyer's proposals made under A or B, Buyer shall either elect to proceed with transaction by waiving this contingency in writing, or declare Agreement void by election of C within 3 calendar days of receipt of Seller's written responses to A or B above.

Purchaser: ☑ DOES ☐ DOES NOT desire to "conduct 'due diligence' as provided above.

**26. MUNICIPAL OCCUPANCY APPROVAL:** Unoccupied, rental and vacant properties are among those that may require local code inspections prior to a sale. Each municipality has its own rules requiring pre-sale code compliance inspection. The Seller(s) and Purchaser(s) agree to be jointly responsible for determining the exact rules in effect that are relevant to this property. The assistance of their separate legal counsel may be required. If a municipal inspection and/or certification of premises are required by law, or Purchaser's lending institution, Seller(s) agrees to pay for said inspections. Seller(s) agrees to complete any and all repairs required by the governing municipality to obtain code compliance prior to closing not exceed $ 200 . Buyer agrees to be responsible for the balance. If no amount is indicated in the space above, Buyer has the option to declare this Agreement void at any time prior to closing.

**27. ACCESS TO PROPERTY LIABILITY OF BUYER FOR INSPECTIONS:** Seller(s) agrees to permit Purchaser(s) and its designated representatives to come upon the Property to conduct surveys and inspections as may be called for in this Agreement. Purchaser(s) agrees to be responsible for any and all damage to the Property as a result of any such surveys and/or inspection(s) performed or commissioned by Purchaser(s). Purchaser(s) agrees to pay for any and all necessary repairs to restore Property to its condition prior to inspection(s) or shall reimburse Seller(s) for their actual cost of such restoration.

[CCB] [ ]
Seller(s) Initials

[SRA 10/04/19 7:57 PM EDT dotloop verified] [ ]
Purchaser(s) Initials

Copyright 2019 Keller Williams Realty Lakeside Market Center

Authentisign ID: A352D4C3-4498-4DEB-8A30-DE0F3977BE10

**28. ADDITIONAL DOCUMENTS FORMING A PART OF THIS AGREEMENT:** The Sellers Disclosure Statement, Lead Based Paint Disclosure, Agency Relationship Disclosure and the following Addendum Forms checked items are made a part hereof:

☐ FHA/VA ☐ Your Protection Get an Inspection ☐ Financing ☐ Well & Septic ☐ Private Road

☐ Unplatted Land ☑ Condominium ☐ Vacant Land ☐ Swim Pool/Hot Tub/Sprinkler ☐ FIRPTA

☐ General Addendum(s) ☐ Contingency Sales ☐ Other(s):____________________ ____________________

29. **DEFAULT:** In the event Purchaser(s) fails to fulfill its obligations set forth herein or fails to close this transaction by the time and in the manner provided, Seller(s) may elect to enforce terms hereof; or cancel this Agreement and be entitled to forfeiture of Purchaser(s) EMD; and/or seek any other available legal or equitable remedies. In the event Seller(s) fails to fulfill obligations set forth herein or fails to close this transaction by the time and in the manner provided, Purchaser(s) may elect to enforce terms hereof; or cancel this Agreement and be entitled to a full refund of its EMD; and/or seek available Legal or equitable remedies.

**30. DISCLAIMER OF BROKER(S) AND RELEASE:** Broker(s) and Broker's agents specifically disclaim responsibility for the condition of the Property and/or for performance of this Agreement by any of the parties and/or any lender. The parties acknowledge that they are not relying on any representation or warranties that may have been made other than those in writing, and in consideration of Brokers' accepting this representation, each party hereby waives and releases any and all claims or causes of action against the Broker(s), their officers, directors, employees and/or agents in any claim arising out of the condition of the Property or the performance of this Agreement. Brokers and their agents are not experts in the areas of law, tax, financing, surveying, structural conditions, hazardous conditions, or engineering, and Purchaser(s) acknowledges that Purchaser(s) has been advised to seek professional advice from experts in these and other areas, including the retention of an attorney to protect their individual legal interests in each phase of this proposed sale and purchase of real estate.

**31. FACSIMILE/ELECTRONIC AUTHORITY:** This Offer, any Counteroffer or Acceptance, may be delivered by use of facsimile/electronic authority with signatures, and that initials and modifications shall be deemed valid and binding upon the parties as if original signatures.

**32. TIME IS OF THE ESSENCE:** Purchaser(s) and Seller(s) understand that no extensions of time limits contained herein are expected or agreed to unless specified in writing and signed by both Purchaser(s) and Seller(s). Time is of the essence in the performance of this Agreement.

**33. PURCHASER ACCEPTANCE OF CONDITION "AS-IS":** By closing on this purchase, Purchaser(s) shall be conclusively deemed to have accepted property in its "AS IS" condition. Purchaser(s) hereby releases the brokers, their officers, directors, employees and/or their agents from any and all claims arising out of the condition of the Property including title.

**34. TIME LIMIT:** Unless withdrawn in a later writing delivered to Seller(s) by Purchaser(s) before Purchaser's receipt of Seller's acceptance, this Offer must be accepted not later than 12:00 *[time]* on 10/08/2019 *[date]* at which time it shall automatically expire and be void.

**35. Other Terms and Conditions:**

**Subject to short sale approval terms and conditions. Closing date 40 days after bank approval.**

CCB ____ Seller(s) Initials

SRA 10/04/19 ____ Purchaser(s) Initials

Copyright 2019 Keller Williams Realty Lakeside Market Center

**36. COUNTER OFFER(S):** In the event Seller(s) makes any written changes to any of the above terms and conditions, such changes shall constitute a counter offer by Seller(s) to Purchaser(s), which Seller(s) must indicate shall remain valid until NA [time] on ____________ [date]. Acceptance of a counter offer by either party shall be deemed binding upon the parties only when the party to whom the counter offer is made initials each change signifying their agreement to that change and receipt of that fully initialed document within the time specified for acceptance. Any partial acceptance of any change made by a party in a counter offer shall be treated as a counter to that counter offer. Any counter offer made at any time to either party allows that party to immediately reject it and terminate this proposed transaction in its entirety.

**37. SUCCESSORS AND ASSIGNS:** This Agreement shall bind the executors, administrators, successors and assigns of the parties.

**38. ENTIRE AGREEMENT:** This written Agreement constitutes the entire agreement between Purchaser(s) and Seller(s). Nothing written before or after it shall be binding upon the parties unless otherwise agreed in writing and signed by all of the parties signing below. Prior negotiations and any verbal agreements among the parties are agreed to be null, void and have no binding effect.

**39. PURCHASER'S OFFER, SIGNATURE & ACKNOWLEDGMENT OF RECEIPT:** Purchaser(s) hereby makes this offer on the terms and conditions contained above, and acknowledge receiving a complete copy of this Agreement.

Witnessing Agent (if any):

/s/ ____________

/s/ Syed R Ahmed (dotloop verified 10/04/19 7:53 PM EDT W724-ZMOY-6N4Y-UPGD)

Purchaser: Syed R. Ahmed

/s/ ____________

Date: 10-4-19

Purchaser: ____________

**40. SELLER'S ACCEPTANCE SIGNATURE:** Seller hereby agrees to terms and conditions contained herein.

Witnessing Agent (if any):

/s/ ____________

/s/ Authentisign Calestro C Bradford 10/7/2019 7:50:23 AM EDT

Seller: Calestro Bradford

/s/ ____________

Date: 10/07/2019

Seller: ____________

**41. PURCHASER'S ACKNOWLEDGMENT OF RECEIPT OF ACCEPTANCE:** Purchaser's signature below acknowledges receipt of Seller's signed acceptance of this Agreement and constitutes a final acceptance of Seller's counteroffer (if any changes were made by the Seller(s), thereby making this Agreement a counteroffer). All deadlines in this Agreement are to be counted from the date last indicated below.

Witnessing Agent (if any):

/s/ ____________

/s/ ____________

Purchaser: Syed R. Ahmed

/s/ ____________

Date: ____________

Purchaser: ____________

Copyright 2019 Keller Williams Realty Lakeside Market Center

# SHORT SALE ADDENDUM TO BUY AND SELL AGREEMENT

Date: 10/04/2019, covering Property located at 30870 Bradmore Road, Warren, MI 48092

Calestro Bradford between Seller and

Syed R. Ahmed Buyer for the

Property commonly known as THE RESERVE AT HERITAGE VILLAGE; M.C.C.P. NO. 943; UNIT # 191, this Addendum to be deemed part of the attached Buy and Sell Agreement (the "Agreement").

1. The sale of the Property is subject to and contingent upon the written agreement of the Seller's mortgagee(s) and any other lienholder(s) (hereafter "mortgagee(s)") to accept less than the amount(s) owed. Moreover, this sale of the Property is contingent upon the Seller's acceptance of any conditions imposed by such mortgagee(s). The parties acknowledge that neither Seller nor Seller's agent can compel any mortgagee or lienholder to agree to accept less than the amount owed or even to respond to such a request.

2. In the event all mortgagee(s) do not consent to the short sale or Seller is unwilling to agree to the conditions imposed by any mortgagee(s), Seller reserves the right to terminate the Agreement, in which event the earnest money shall be refunded to Buyer and neither party shall have any further rights or obligations hereunder.

3. Buyer reserves the right to terminate this Agreement at any time if all mortgagee(s) have not consented to this transaction, in writing, within 90 days from the acceptance of the Agreement by Buyer and Seller, in which event the earnest money deposit shall be refunded to Buyer and neither party shall have any further rights or obligations hereunder.

4. In the event of termination of the Agreement pursuant to Paragraph 2 or 3 above, neither party will have any liability to the other party for any expenses incurred by that party in anticipation of closing.

5. All timeframes referenced in the inspection clause in the Agreement shall commence upon: **(select one)** ☐ receipt of all mortgagee(s)' written consent.
   ☑ acceptance of the Agreement by Buyer and Seller.

6. The Property shall be reported with the local multiple listing service as a "pending sale" upon acceptance of the Agreement by Buyer and Seller.

©2010 Michigan Association of REALTORS®, 01/10 PO Box 40725, Lansing, MI 48901-7925 Ph. 800.454.7852 Fax 517.334.5568



7. All parties acknowledge that they have been advised to obtain legal advice concerning the terms of a short sale transaction and professional tax advice regarding the tax implications of such a transaction. Seller specifically acknowledges that no agent has made any representation with respect to any continued liability on any existing mortgage or lien and that Seller has been advised to seek legal advice on this issue. Seller should not assume that the mortgagee(s) approval of the short sale, acceptance of a lesser amount and the granting of a discharge of mortgage will release the Seller from any obligation to pay the mortgagee(s) for any deficiency or difference between the amounts owed to the mortgagee(s) and the amount paid to the mortgagee(s) at closing.

Authentisign
Calestra C Bradford 10/07/2019
10/7/2019 7:50:20 AM EDT
Seller Date

Syed R Ahmed
dotloop verified 10/04/19 7:49 PM EDT RFYQ-FYLJ-YJX8-P5GR
Buyer Date

Seller Date

Buyer Date

Disclaimer This form is provided as a service of the Michigan Association of REALTORS®. Please review both the form and details of the particular transaction to ensure that each section is appropriate for the transaction. The Michigan Association of REALTORS® is not responsible for use or misuse of the form, for misrepresentation, or for warranties made in connection with the form.

©2010 Michigan Association of REALTORS®, 01/10 PO Box 40725, Lansing, MI 48901-7925 Ph. 800.454.7852 Fax 517.334.5568



AuthentisIgn ID: A352D4C3-4498-4DEB-8A30-DE0F3977BE10

# CONDOMINIUM CLAUSE ADDENDUM

Property Address: 30870 Bradmore Rd, Warren, MI 48092

Purchase Agreement Date: 10-4-19 Sales Price: $ 306,000

The above captioned Purchase Agreement is hereby amended or added to as follows:

**Association Approval:** If the condominium documents require that the purchaser apply and be approved for membership in the Condominium Association, Purchaser agrees to so apply with three (3) calendar days after receiving the necessary application forms. If, for any reason, the Association refuses to approve Purchaser for membership or withholds approval beyond the date of the scheduled Association Board of Directors meeting or scheduled meeting after Purchaser's application has been submitted, this agreement shall be cancelled and all earnest money deposited shall be returned to Purchaser.

**Inspection of Master Deed:** This offer is contingent upon Purchaser's inspection and approval of the Master deed, By-laws, Amendments and most recent Financial Statements of the Condominium Association. Such inspection and approval shall be made within 10 calendar days after delivery of said documents to Purchaser. Delivery shall be in care of Selling Broker within 10 calendar days after date of Purchaser's receipt of Seller's acceptance of this offer. Unless Purchaser notifies Seller, in writing in care of Selling Broker within the number of days stipulated, of Purchaser's dissatisfaction with the provisions contained in these documents, this contingency shall be deemed to have been waived and this transaction shall proceed to consummation as specified herein. Upon proper notification in writing of Purchaser's dissatisfaction, this agreement shall be cancelled and all earnest money deposited shall be returned to Purchaser.

**Working Capital:** It is mutually agreed that Condominium Association funds variously described as; working capital deposit, initial operating capital deposit, reserve account, capital expenditure reserve, Seller's equity in Condominium Association Funds, insurance reserve fund or prepaid insurance, or any funds other than monthly Association dues or fees shall be included within the purchase price and assigned to Purchaser, excepting only where the Condominium documents of the Condominium being purchased specifically call for reimbursement of such funds to Seller. Monthly Association dues or fees shall be prorated in accordance with the proration of current taxes as provided by the agreement.

Purchaser(s):

Date:

Seller(s):

Authentisign
Calestra C Bradford
10/7/2019 7:50:21 AM EDT

Date: 10/07/2019

Copyright 2016 Keller Williams Realty Lakeside Market Center

InstanetFORMS



323 FIFTH STREET (95501)
P.O. BOX 35
EUREKA, CA 95502
800-603-0836
FAX (707) 443-1562
8:00 a.m. - 5:00 p.m. PST
Main Office NMLS #5985
Branch Office NMLS #9785

November 27, 2019

*YOU ARE HEREBY NOTIFIED THAT SN SERVICING CORPORATION, ITS EMPLOYEES, AGENTS AND ATTORNEYS ARE ATTEMPTING TO COLLECT THIS DEBT. ANY INFORMATION THAT WE OBTAIN WILL BE USED FOR THAT PURPOSE. IF YOU HAVE PREVIOUSLY RECEIVED A DISCHARGE IN BANKRUPTCY AND THIS DEBT WAS NOT REAFFIRMED, THIS CORRESPONDENCE IS NOT AND SHOULD NOT BE CONSTRUED TO BE AN ATTEMPT TO COLLECT SUCH A DEBT AS YOUR PERSONAL LIABILITY, BUT IS INSTEAD A STEP IN THE ENFORCEMENT OF A MORTGAGE LIEN AGAINST YOUR PROPERTY.*

**Para información en español llame al (800) 603-0836 ext 2643**

RE:
Calestro C. Bradford
30870 Bradmore Road
Warren, MI 48092

Account. No. 288659

To Whom it May Concern:

SN Servicing Corporation as servicing agent for has agreed to accept a payoff on the above captioned loan subject to the following conditions:

1. The closing shall take place on or before 12/30/2019
2. SN Servicing Corporation net proceeds shall be no less than $278,675.00
3. Upon payment in full of the agreed settlement amount, SN Servicing Corporation will release any liens, judgments, or debt regarding the subject account.

**ANY CHANGES TO THE ABOVE TERMS MUST BE APPROVED BY SN SERVICING CORPORATION.**

Please remit the agreed settlement amount in certified funds, to the address below. To ensure proper posting, reference the Account number on the face of the check. Wiring instructions are also included for your convenience.

**EXHIBIT B**

SN Servicing Corporation
PO Box 660820
Dallas, TX  75266-0820

Wiring Instructions:
Bank of Texas –
A division of BOKF,NA Tulsa OK
Account Number: 8095283520
ABA#: 111014325
Reference: Loan No. 288659

If you have any questions, please contact me at   800-603-0836 ext. 2676

Sincerely,

Jessica Arnot
Asset Manager
SN Servicing Corporation

# Closing Disclosure

## Closing Information

| | |
|---|---|
| Date Issued | 11/26/2019 |
| Closing Date | 12/27/2019 |
| Disbursement Date | |
| Settlement Agent | Liberty Title Agency - Sterling Heights |
| File # | LIB123616 |
| Property | 30870 Bradmore Rd.<br>Warren, MI 48092-6319<br>(12-13-08-205-191) |
| Sale Price | $306,000 |

## Transaction Information

| | |
|---|---|
| Borrower | Syed R. Ahmed<br>26321 Nicola Dr.<br>Warren, MI 48091 |
| Seller | Calestro Constance Bradford<br>30870 Bradmore Rd.<br>Warren, MI 48092-6319 |

## Summaries of Transactions

SELLER'S TRANSACTION

| | |
|---|---|
| **M. Due to Seller at Closing** | **$309,309.11** |
| 01 Sale Price of Property | $306,000.00 |
| 02 Sale Price of Any Personal Property Included in Sale | |
| 03 | |
| 04 | |
| 05 | |
| 06 | |
| 07 | |
| 08 | |
| Adjustments for Items Paid by Seller in Advance | |
| 09 City/Town Taxes 12/27/2019 to 7/1/2020 @ $6,149.04/Year | $3,141.72 |
| 10 County Taxes 12/27/2019 to 12/1/2020 @ $180.23/Year | $167.39 |
| 11 Village Taxes 12/27/2019 to | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| **N. Due from Seller at Closing** | **$309,309.11** |
| 01 Excess Deposit | |
| 02 Closing Costs Paid at Closing (J) | $23,586.10 |
| 03 Existing Loan(s) Assumed or Taken Subject to | |
| 04 Payoff of First Mortgage Loan to SN Servicing | $278,675.00 |
| 05 Association Fees to Heritage Village Master Association | $675.00 |
| 06 Delinquent HOA Dues-EST to The Reserves at Heritage Villag | $6,373.01 |
| 07 | |
| 08 | |
| 09 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| Adjustments for Items Unpaid by Seller | |
| 14 City/Town Taxes | |
| 15 County Taxes | |
| 16 Assessments | |
| 17 | |
| 18 | |
| 19 | |

CALCULATION

| | |
|---|---|
| Total Due to Seller at Closing (M) | $309,309.11 |
| Total Due from Seller at Closing (N) | -$309,309.11 |
| Cash to Close ☐ From ☐ To Seller | $0.00 |

## Contact Information

| | |
|---|---|
| **Real Estate Broker(B)** | |
| Name | Keller Williams Lakeside |
| Address | 45609 Village Blvd<br>Shelby Township, MI 48315 |
| MI License ID | |
| Contact | Jamie Arnold |
| Contact MI License ID | |
| Email | jamiea@kw.com |
| Phone | (586) 822-2793 |
| **Real Estate Broker(S)** | |
| Name | Keller Williams Realty Lakeside |
| Address | 45609 Village Blvd<br>Shelby Twp, MI 48315 |
| MI License ID | 22441158 |
| Contact | Paula Cikota |
| Contact MI License ID | 6501308099 |
| Email | pcikota@comcast.net |
| Phone | (586) 532-0500 x1194 |
| **Settlement Agent** | |
| Name | Liberty Title Agency - Sterling Heights |
| Address | 12900 Hall Rd.<br>Suite 150<br>Sterling Heights, MI 48313 |
| MI License ID | 1119424 |
| Contact | |
| Contact MI License ID | |
| Email | |
| Phone | |

**Questions?** If you have questions about the loan terms or costs on this form, use the contact information below. To get more information or make a complaint, contact the Consumer Financial Protection Bureau at www.consumerfinance.gov/mortgage-closing

# Closing Cost Details

| Loan Costs | Seller-Paid At Closing | Seller-Paid Before Closing |
|---|---|---|
| **A. Origination Charges** | | |
| 01 | | |
| **B. Services Borrower Did Not Shop For** | | |
| 01 | | |
| **C. Services Borrower Did Shop For** | | |
| 01 Title - Attorney's fees to GHK | $1,500.00 | |
| 02 Title - Payoff Processing/Delivery Fee to Liberty Title | $50.00 | |
| 03 Title - Settlement or closing fee to GHK/Liberty Title | $1,100.00 | |

| Other Costs | Seller-Paid At Closing | Seller-Paid Before Closing |
|---|---|---|
| **E. Taxes and Other Government Fees** | | |
| 01 Transfer Tax - City/County to Macomb County Register of Deeds | $336.60 | |
| 02 Transfer Tax - State to Macomb County Register of Deeds | $2,295.00 | |
| **F. Prepaids** | | |
| 01 | | |
| **G. Initial Escrow Payment at Closing** | | |
| 01 | | |
| **H. Other** | | |
| 01 2019 Winter Tax Estimate to Warren City Treasurer | $270.35 | |
| 02 Compliance Fee to GHK | $450.00 | |
| 03 Current Water Bill Due to City of Warren Water Division | $147.89 | |
| 04 Duplicate Tax Bill Fee to Warren City Treasurer | $2.00 | |
| 05 Exam Fee to GHK | $400.00 | |
| 06 Lien Release Tracking Fee to Proplogix | $35.00 | |
| 07 Proration Review to GHK | $600.00 | |
| 08 Real Estate Commission to Keller Williams Lakeside | $7,650.00 | |
| 09 Real Estate Commission to Keller Williams Realty Lakeside | $6,975.00 | |
| 10 Search Fee to GHK | $334.29 | |
| 11 Title - Owner's Title Insurance to Liberty Title | $1,439.97 | |
| **J. TOTAL CLOSING COSTS** | $23,586.10 | $0.00 |

# Supplemental Page

By signing, you are only confirming that you have received this form.

CALESTRO CONSTANCE BRADFORD Date

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re:

CALESTRO C. BRADFORD,

Debtor.
______________________________/

Chapter 13
Case No. 16-53993-mbm
Hon. Marci B. McIvor

**CERTIFICATE OF SERVICE**

I hereby certify that on December 2, 2019, I electronically filed *1) Motion for Entry of Order Authorizing Sale of Property Free and Clear of Liens, Payment of Real Property Taxes, Homeowner's Association Dues, Commissions and Closing Costs at Closing and for Other Relief; 2) Proposed Order Authorizing Sale of Property Free and Clear of Liens, Payment of Real Property Taxes, Homeowner's Association Dues, Commissions and Closing Costs at Closing and for Other Relief; 4) Certificate of Service, and 5) Exhibits* with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Office of the U.S. Trustee
211 W. Fort Street, Suite 700
Detroit, MI 48226

David Wm. Ruskin
Chapter 13 Standing Trustee
26555 Evergreen Rd., Ste. 1100
Southfield, MI 48076-4251

I also hereby certify that on December 2, 2019, I have mailed by First Class Mail with the United States Postal Service *1) Motion for Entry of Order Authorizing Sale of Property Free and Clear of Liens, Payment of Real Property Taxes, Homeowner's Association Dues, Commissions and Closing Costs at Closing and for Other Relief; 2) Proposed Order Authorizing Sale of Property Free and Clear of Liens, Payment of Real Property Taxes, Homeowner's Association Dues, Commissions and Closing Costs at Closing and for Other Relief; 4) Certificate of Service, and 5) Exhibits* to the following non-ECF participants:

US Bank Trust, N.A.
c/o Jon J. Lieberman, Esq.
Attorney for U.S. Bank Trust, N.A.
Sottile & Barile
394 Wards Corner Rd., Ste. 180
Loveland, OH 45140

Calestro C. Bradford
30870 Bradmore Rd.
Warren, MI 48092

Lawrence Rocca, Treasurer
Macomb County Treasurer
1 South Main Street, 2nd Floor
Mt. Clemens, MI 48043

The Reserves at Heritage Village
c/o KC Property Service, LLC
26711 Woodward Ave., Ste. 310
Huntington Woods, MI 48070

City of Warren Water Dept.
1 City Square
Warren, MI 48093

**EXHIBIT 4**

I also hereby certify that on December 2, 2019, I have mailed: *1) Motion for Entry of Order Authorizing Sale of Property Free and Clear of Liens, Payment of Real Property Taxes, Homeowner's Association Dues, Commissions and Closing Costs at Closing and for Other Relief; 2) Proposed Order Authorizing Sale of Property Free and Clear of Liens, Payment of Real Property Taxes, Homeowner's Association Dues, Commissions and Closing Costs at Closing and for Other Relief; 4) Certificate of Service, and 5) Exhibits* by First Class Mail with the United States Postal Service to the following non-ECF participants:

All parties listed on the court's matrix of creditors.


GOLD, LANGE & MAJOROS, P.C.

Dated: December 2, 2019                        */s/ Jason P. Smalarz*
                                           JASON P. SMALARZ (P71042)
                                           Attorneys for Debtor
                                           24901 Northwestern Highway, Suite 444
                                           Southfield, MI 48075
                                           (248) 350-8220
                                           jsmalarz@glmpc.com